# EXHIBIT E

**SEPTEMBER 11TH VICTIM'S
COMPENSATION FUND**
-----------------------------------------------------------------x
In the Matter of the Claim of                                   **Claim No: 212-000224A**

MERCEDES MOLINA, Spouse and Personal
Representative of the Estate of MANUEL MOLINA,
deceased.
                                                                **AFFIDAVIT OF
                                                                MERCEDES MOLINA**
-----------------------------------------------------------------x

State of New York    )
                     )ss:
County of New York   )

   **MERCEDES MOLINA**, being duly sworn, deposes and says as follows:

   1. I am the wife of Manuel Molina who died in the World Trade Center on September 11, 2001. I am also the personal representative of his estate. I submit this affidavit in support of the application for benefits from the Victim's Compensation Fund. The purpose of this affidavit is to bring to the attention of the Fund the circumstances of my claim as well as additional "special circumstances", such as my severe physical and mental disability, that I believe compel an enhanced award in this case, in excess of the presumed economic and non-economic losses. The economic losses claimed are set forth in the accompanying Appraisal of Economic Loss prepared by economist Thomas Kershner. Exhibit D. I am represented by attorneys Shafran & Mosley, P.C., Empire State Building, 350 5th Avenue, Suite 2310, New York, N.Y. 10118 ; Telephone: (212) 631-7000.

   2. My husband Manuel DeJesus Molina died on September 11, 2001 while working in the World Trade Center. He is survived by me-- his wife-- and three children.

   3. Manuel was born on December 24, 1969 and was age 31 at the time of his death

   4. Prior to his death, Manuel was employed by American Building Maintenance Co.

1

("ABM") for over nine years. He worked, and died, in Tower 2 of the World Trade Center on the 107th Floor. (See Death Certificate, Exhibit E [original raised seal copy is in my attorney's possession]; also October 15, 2002 letter from ABM, Exhibit F). Manuel died intestate. As his wife, I have been issued Letters of Administration for the Estate dated February 19, 2002 by the Bronx County Surrogate. (See Letters of Administration, Exhibit G). An application for Advance benefits has been previously submitted and said advance benefits were paid to me in the amount of $50,000.

## The Molina Family

5. Manuel was survived by me-- his wife-- and my three children. I was completely dependent on Manuel for financial support at the time of his death. The three children were all minors at the time of his death. At the time of Manuel's death we all resided together in an apartment at 3407 DeKalb Avenue, Bronx, New York 10467.

6. My date of birth is January 29, 1960. I am currently 43 years old. I have 3 children, all three of whom currently reside with me at 3407 DeKalb Avenue. They are as follows.

7. Jaimercedes Taveras ' date of birth is March 17, 1993. She is currently age 10. She was age 7 at the time of Manuel's death. Jaimercedes is now in the fifth grade at St. Ann's Catholic School in the Bronx. It is my belief that Jaimercedes is Manuel's natural child. However, the child's birth certificate lists my former husband "Jaime Raphael Taveras" as the child's father. I commenced a proceeding pending in New York State Supreme Court, Bronx County for a name change, changing this child's last name from "Taveras" to "Molina." However, Mr. Taveras has declined to renounce his paternity of the child. My attorney in that proceeding has now indicated that he will not pursue the matter. I do wish to bring to the Special Master's attention the documents and affidavits that I submitted in support of the application for a name change, including various affidavits attesting that

2

Manuel was the biological father of Jaimercedes. See Exhibit L. However, to the best of my knowledge no governmental entity has issued a ruling as to Manuel's paternity of Jaimercedes. Although there was no official finding of paternity or formal adoption of Jaimercedes by Manuel, he acted as a father to her in every way and she considered him her father. Mr. Taveras' relationship with all of the children-- or lack thereof-- is discussed more fully later in this affidavit.

8. The middle child is Jamimelin M. Taveras. Her date of birth is June 4, 1990. She is currently age 13. She was age 10 at the time of Manuel's death. She is currently in the eighth grade at public school M.S. 80 in the Bronx. Although there was no formal adoption, Manuel acted as a father to her and she considered him her father.

9. My oldest daughter is Jaimenys A. Taveras. Her date of birth is April 22, 1983. Jaimenys is currently age 20. Jaimenys was a minor of age 17 at the time of Manuel's death. Although there was no formal adoption, Manuel acted as a father to her and she considered him to be her father.

10. Manuel resided with me, and the children as a family since before Jaimercedes' birth in 1993, throughout which time he acted as a husband to and provider for me and as a father to the children. Throughout that time, he was the only member of the family with an income. Manuel and I were married in April 2000. (See Marriage Certificate, Exhibit H [original embossed copy is in my attorney's possession]).

11. The three children were listed as dependents on our 1997, 1998, 1999, and 2001 income tax returns. See Exhibit I.

12. Although our 2000 tax documents list persons other than those listed herein as Manuel's dependents, those persons were not Manuel's financial dependents in 2001 or at the time

3

212-000224A-0074

of his death. We are not claiming these persons as dependents for purposes of Fund compensation.

13.     The three children all claim the $ 50,000.00 non-economic loss. Since Manuel acted as a father to these children and we all lived together, they have suffered the same loss as a biological child. Indeed, as set forth herein, all three children required extensive counseling after the death to help them cope with their grief and all have suffered significant economic and non-economic loss.

### Decedent's Income and the Survivors' Economic Losses

14.     I am permanently disabled as a result of accidents that occurred around 1990 and 1997. As a result I am unable to work. As a result of my disability, Manuel was the exclusive means of financial support for the family. Employed with ABM, he worked as a building maintenance worker at the World Trade Center. Manuel's income history, fringe benefits, medical benefits, and pension benefits are set forth in detail in the Appraisal of Economic Loss prepared by economist Thomas Kershner. See Exhibit D.

15.     Manuel was a hard working man with a wonderful work ethic. He expressed many times to me that he enjoyed his job and enjoyed working and he expressed that he would continue to work as long as he was able, certainly well past age of 65. Also, given my disability and inability to work and contribute to our children's cost of education or to our mutual retirement, Manuel would have been unable to retire before age 65. For this reason, it is my belief that he would have worked at least to age 65, well beyond the Fund's guideline of approximately age 59. I request that the Fund, in making its determination, award economic damages as if Manuel was working to at least age 65.

### Non-Economic Losses and Special Circumstances

### Loss of Services to Wife

16.     I have been permanently and totally disabled since around 1990. As the attached

4

medical records evidence, I suffer significant physical and psychiatric disability.

17. By way of summary: I am 43 years old. In the past, I was involved in two serious accidents. As a result, I suffered the following various permanent injuries addressed below. As a result of my injuries I am permanently and totally disabled and live in chronic pain. I cannot ambulate without assistance. I am required to utilize a wheelchair or crutches to ambulate. I am not independent in my activities of daily living.

18. Due to my injuries, I am unable to work at any occupation and am unable to care for my children without assistance.

19. I currently am assisted by a home care attendant Monday through Friday for three (3) hours per day and on Saturday for four (4) hours per day. Medicaid currently pays for this service, but will cease to do so upon any award by this Fund.

20. At present, due to my disability and due to the absence of my husband, I also pay for a family assistant to assist me with my children every day, five days a week for eight hours a day. I currently pay $350 for this service, but anticipate that the cost will increase with the new year and will increase periodically in the future. The person I currently pay is unskilled; were I to employ a skilled person, the cost would be dramatically higher.

21. In order that the Special Master may appreciate the extent of my disability, I will summarize my medical treatment and attach various medical records. Further records or testimony can be provided if the Fund would find it beneficial to clarifying this issue.

22. I have had a series of MRIs that demonstrate severe discogenic and spondyloarthotic disease which already have required three neurosurgeries. <u>See</u> Report of Neurosurgeon Modesto Fontanez, M.D. dated 7/30/99, part of Exhibit K. I have endured two surgical laminectomies in the

lumbar sacral area in 1990 and 1991. Id. I also endured a lumbar spine surgery due to lumbar stenosis in 1999. Id. I suffer recurrent disc herniation at the L4-L5 discs of the lumbar spine, have epidural fibrosis at L4-L5 and chronic radiculopathy in the same area. See medical records, Ex. K.

23. My neurosurgeon Modesto Fontanez, M.D. explains in his report that:

"[Mrs. Molina] has a highly compromised spine with involvement of her joints and ligamentous structures as well as chronic lumbar nerve root dysfunction. By virtue of these she has substantial functional impairment in her lower extremities distally with limited ambulatory capacity and functional impairment in the axial weight bearing capacity of her spine. Her lumbar spine condition is permanent. She is unable and is not medically recommended to climb or come down stairs or stairways."

See Report of Neurosurgeon Modesto Fontanez, M.D. dated 7/30/99, part of Exhibit K.

24. As described in the New York State disability records, I suffer severe lower back pain, inability to bend at the waist, difficulty with waist movement, and radiating pain and weakness in, and resulting in limited use of, my left leg, causing me to have only a limited ability to walk. Exhibit K.

25. My disability requires that I wear a brace at my lumbar spine and use a cane to ambulate due to the limited use of my left leg. See Exhibit K. I have a limp and significant abnormality in my gait which limits my mobility significantly. See Exhibit K. My disability obliges me to take a variety of medications including pain medication, anti depressive medication, and others.

26. Accordingly, I am permanently unable to work and need constant assistance for myself and my children.

27. I also have been treated for chronic depression since 1992, since which time I customarily have seen my therapist either weekly or every two weeks for psychotherapy and have seen my physician monthly for medication management.

28. As my therapist Edward Medina, CSW explains in his January 25, 2002 letter, my

6

212-000224A-0077

depression "condition worsened due to the tragic loss of her husband Manuel Molina on 9/11/01 at the World Trade Center." See Exhibit K, 1/25/02 letter from Montefiore Medical Center, Albert Einstein College of Medicine; also see Exhibit K, 7/22/03 letter from Montefiore Medical Center, Albert Einstein College of Medicine.

29. The loss of Manuel and my psychiatric condition exacerbates my disability (see 7/22/03 letter from Montefiore Medical Center), propounding the special circumstances which the Special Master should consider when making its award.

30. Due to my disability, the death of my husband left another void in the Molina household. Since I am unable to engage is common household chores or activities of daily living, such as grocery shopping and cleaning, my husband's household services were all the more valuable. My husband assisted me with all of these tasks and many other household and child care tasks.

31. My husband was also a primary caregiver and head of household to the three children, assuming a larger parenting role due to my disabilities. With the death of my husband, I am now obliged to have, as set forth above, a full time family assistant to assist me with the care of my children and a home care attendant to care for my own health needs and other lost benefits.

32. I also wish to bring to the Fund's attention, that when I receive an award, I will no longer be qualified for Medicaid. I then will lose my home attendant, upon whom I rely solely for assistance in all aspects of my daily life. I respectfully request that the award include a component for the cost of a home attendant.

33. For the above reasons, any award on the part of the Compensation Fund must suffice to support me for the rest of my life, including providing for a home care attendant, as well as to help put our children through college, as I have no means to support myself or the three children.

212-000224A-0078

**Loss of Parental Support to Children and Loss of Nurture, Care and Guidance**

34. Due to my physical and psychiatric condition, my husband, prior to his death, had assumed a large role, not only as the sole wage earner, but also as the lead in the family's home life and in the child-rearing. His death has created a large void, even larger than one would ordinarily assume resulting from the untimely death of a father.

35. Further, as a result of my husband's death, my ability to care for myself and for our children has greatly diminished due to the exacerbation of my chronic depression. Therefore, unfortunately, it is not only the services of the decedent which have been lost, but my own services to the family concomitantly have been diminished, creating a further void.

36. My two younger children also have undergone grief counseling at Montefiore Hospital for what I recall was almost a year to help them cope with the death of their father. My oldest child sought counseling from the parish priest at St. Brenda Roman Catholic Church in the Bronx.

37. Please note that Mr. Jaime Raphael Taveras, the biological father of the children other than Jaimercedes, has lived is the Dominican Republic for continuously for approximately the last ten (10) years. Other than an occasional greeting card, he has no contact with the children. He has not visited them in years and has nothing to do with their upbringing. He provides no financial support of any type to the children and has not provided done so for more than ten years.

38. Manuel, on the other hand, has acted as a father to not only Jaimercedes, but to the other two children as well. He acted as a father is all emotional and material ways, providing them with nurture, care and guidance throughout their lives. For example, he would help with homework, attend school events, attend medical appointments, cook for them, help dress them and take them on regular outings. He did everything a father would be expected to do for his children, as well as most

of the things a mother would do (since my activities are limited due to my disability). Manuel also provided me with financial support which inured directly to the children's benefit. Myself, Manuel and the three children were a family unit, of which Manuel was the head. The children considered him their father. As discussed above, his death caused a tremendous void in the children's lives.

39. Based upon the foregoing, I respectfully request that the Fund grant an award which will suffice to compensate my children for the loss of a father who had assumed a larger than customary parenting role and for other losses related to his death.

## OTHER MATTERS

40. In terms of a planned distribution, pursuant to New York State law, I, as his spouse, am the only distributee. Accordingly, all economic wrongful death damages (except nurture, care and guidance to the children) should be awarded to me[1].

41. Given the special circumstances whereby Manuel considered the three children his own and the three children considered Manuel their father, and they were financially and emotionally dependent upon them, each child be awarded the $50,000 non-economic benefit in accordance with Fund section 104.44. Also given the circumstances of Manuel' enlarged parental role, I request that the $ 50,000.00 non-economic award in accordance with section 104.44 be adjusted upward, if allowable under the Guidelines. I also request that the Fund consider all of the circumstances presented herein and allow for an award for loss of nurture, care and guidance based upon Manuel's role as a father who provided these services to the children, notwithstanding the actual adoption or paternity.

---

[1] There has been no adjudication as to the paternity of Jaimercedes. However, the circumstances surrounding the paternity of Jaimercedes have herein been brought to the attention of the Special Master who may decide to consider same relative to distribution of any award.

9

42. Whomever is required by law to be notified of this claim has been notified at the time of the application for advance benefits. See Exhibits A and B.

43. Any questions can be referred to my attorneys Shafran & Mosley, P.C. (Attention Kevin Mosley) at 212-631-7000, office address at Empire State Building, 350 Fifth Avenue, Suite 2310, NY, NY 10118.

WHEREFORE, I respectfully request Fund award an enhanced award for all of the above reasons.

_____
MERCEDES MOLINA

Sworn to this
31 day of December 2003
before a Notary Public.

_____
NOTARY PUBLIC

KEVIN L. MOSLEY, ESQ.
Notary Public, State of New York
No. 41-4912327
Qualified in Queens County
Commission Expires October 19, 2005

10

212-000224A-0081